WILLIAM T. ZOPFI AND WIFE, AUDREY N. ZOPFI, RICHARD B. GRUELLE AND WIFE, CAROLYN L. GRUELLE, LOWELL C. BRITTON AND WIFE, ELIZABETH T. BRITTON, FLETCHER M. GREEN, II, AND WIFE, JULIA HALL GREEN, ON BEHALF OF THEMSELVES AND OTHER OWNERS OF LOTS AND RESIDENCES IN LONG LEAF HILLS SUBDIVISION, SECTION 7, v. CITY OF WILMINGTON, NORTH CAROLINA, MAYOR O. O. ALLSBROOK, COUNCILMEN JOHN SYMMES, L. M. CROMARTIE, C. H. HARRINGTON, W. ALEX FONVIELLE, JR., HUGH MORTON, AGNES M. MORTON AND AGNES M. COCKE.

(Filed 10 April 1968.)

**1. Municipal Corporations § 30—**

In the absence of a valid zoning ordinance prohibiting the use of property for a shopping center or for multiple-family apartment houses, the owner of land may use it for such purpose even though he thereby makes the adjoining property less desirable, neither of such uses being a nuisance *per se* or an encroachment, and in such instance the diminution in the value of the adjoining property is *damnum absque injuria.*

**2. Same—**

Zoning laws are an exercise of the police power of the sovereign reasonably to regulate or restrict the use of private property to promote the public health, safety, morals or welfare.

**3. Same; Constitutional Law § 15—**

The original zoning power of the State rests in the General Assembly and is subject to the constitutional limitations against arbitrary and unduly discriminatory interference with the rights of property owners.

**4. Same—**

A municipal corporation has no inherent zoning power, and municipalities can exercise such power only to the extent and within the limitations of statutes delegating this legislative power. G.S. 160-172 *et seq.*

**5. Municipal Corporations § 30—**

The enactment of a zoning ordinance is not a contract with the property owners of the city, and such legislation may be repealed or amended by the municipality from time to time. G.S. 160-176.

**6. Same—**

There is a presumption in favor of the validity of a zoning ordinance adopted pursuant to prescribed procedures, and the mere fact that the ordinance depreciates the value of the complainant's property is insufficient to establish its invalidity.

**7. Municipal Corporations § 31; Courts § 1—**

Upon review of the amendment of a zoning ordinance by a municipal legislative body, the courts may not substitute their opinion for that of the legislative body so long as there is some plausible basis for the conclusion reached by that body.

**8. Municipal Corporations § 30—**

Amendment to a zoning ordinance reclassifying a forty-acre area from

a residential zone to zones for commercial use and for multiple-family apartment use will not be held invalid on the ground that it is arbitrary or capricious or that it constitutes "spot zoning" when the evidence discloses that this particular area, lying at the apex of the triangle formed by two intersecting and heavily traveled highways, is inappropriate for single family residential use.

**9. Municipal Corporations § 31—**

In an action under the Declaratory Judgment Act to review the authority of a municipality to adopt a rezoning ordinance, trial by jury is properly refused where the controverted facts to be determined by the court present questions of fact and not issues of fact.

APPEAL by plaintiffs from *Mintz, J.*, at the August 1967 Session of NEW HANOVER.

Mrs. Morton and Mrs. Cocke are the owners of a tract of land containing approximately sixty acres, a small part of which is within the city of Wilmington and all of which lies within the territorial zoning jurisdiction of the city. The land lies at the intersection of Shipyard Boulevard and N. C. Highway 132, forming a triangle bounded by these two major arteries of traffic and the Long Leaf Hills subdivision. Prior to 3 March 1967 the entire tract was subject to a comprehensive zoning ordinance of the city, the validity of which is not in question. By that ordinance, a small portion of the tract at the apex of the triangle, *i.e.*, nearest the intersection of the highway, was in Zone C-1, permitting use for commercial activities. The remainder was in Zone R-1AA, permitting use for single family residences only.

The base of the triangle, *i.e.*, the portion furthest removed from the highway intersection, adjoins the Long Leaf Hills subdivision, all of which is zoned for single family residences only. The named plaintiffs are the owners of homes in the Long Leaf Hills subdivision adjoining or in close proximity to such base line of the Morton-Cocke triangular tract. Other properties lying across the two highways from the Morton-Cocke triangular tract include the grounds of a public high school and areas which, except for a small area near the intersection of the highways, are zoned for residential use only.

On 18 January 1967, Mrs. Morton and Mrs. Cocke applied to the Planning Commission for a recommendation to the City Council that their property be rezoned so as to transfer to Zone C-1 (commercial use) the twenty-seven and one-half acres nearest to the apex of the triangle, transfer to Zone R-3 (multiple family apartment use) the next twelve acres and leave in Zone R-1AA (residential use only) the remainder of the tract. The proposed use contemplates

the construction of a shopping center on the twenty-seven and one-half acre tract, the construction of multiple family apartment houses on the twelve acre tract and the establishment of two new streets and three rows of lots for single family residences on the remainder. If this plan is carried out the three rows of single family residential lots will roughly parallel the base line of the triangle so as to lie between the Long Leaf Hills subdivision, in which the homes of the plaintiffs are located, and the strip where the multiple family apartments are to be constructed, these apartments then being between the single family residential lots and the proposed shopping center and its parking area. Under this plan the multiple family apartment buildings will be approximately 600 feet from the homes of the plaintiffs and the boundary of the shopping center area will be 800 feet from their homes.

Following a public hearing the Planning Commission declined to make such recommendation to the City Council. Mrs. Morton and Mrs. Cocke then appealed to the Council and following a further public hearing the Council adopted two ordinances declaring the said portions of the Morton-Cocke property so rezoned for C-1 and R-3 uses.

The named plaintiffs, on behalf of themselves and other property owners in the Long Leaf Hills subdivision, thereupon instituted this action seeking a declaratory judgment to determine the validity of the said ordinances so rezoning the Morton-Cocke property and determining the prospective rights of the plaintiffs and defendants with reference to such zoning. The matter came on to be heard before Mintz, J., who, after denying a motion by the plaintiffs for a trial by jury, heard evidence, found the facts to be as above stated, in substance, and concluded therefrom, as matters of law, that the rezoning ordinances were duly adopted and valid, that in adopting them the City Council did not act arbitrarily or capriciously, but in good faith and in a reasonable manner consistent with its comprehensive zoning plan. He further concluded that the zoning ordinances bear a reasonable and substantial relation to the public safety, health, morals, comfort and general welfare. Upon such findings of fact and conclusions of law he adjudged the zoning ordinances to be valid and the plaintiffs to be not entitled to the relief for which they pray, taxing the costs of the action against the plaintiffs.

From such judgment the plaintiffs have appealed, assigning as error the denial of their request for a jury trial, numerous rulings upon the admission of evidence, the denial of their motions to strike certain allegations from the answers of the defendants and the court's

findings of fact, in their totality, as not being supported by the evidence.

*Aaron Goldberg and James L. Nelson for plaintiff appellants.*
*Yow and Yow and Hogue, Hill & Rowe for defendant appellees.*

LAKE, J.   The plaintiffs do not complain of any restriction imposed by the zoning ordinances upon their rights to use their own properties as they wish to use them. The ordinances in question leave the plaintiffs free to do that. What the plaintiffs seek is an adjudication that Mrs. Morton and Mrs. Cocke are not entitled to make the uses of their property which they wish to make of it and which the ordinances in question purport to permit.

To arrive at this result the plaintiffs seek an adjudication that the amending ordinances permitting such uses of the Morton-Cocke land are void, so as to leave in force the original comprehensive ordinance under which the proposed uses of that property were prohibited. If the original comprehensive ordinance is still applicable to the Morton-Cocke property, the plaintiffs, adjoining property owners, would be proper parties to maintain an action to enjoin a use of the Morton-Cocke property in violation of that ordinance for, in that event, the proposed use would be unlawful and the plaintiffs would be, according to their allegations, injured by it. *Harrington & Co. v. Renner,* 236 N.C. 321, 72 S.E. 2d 838.

In the absence of a valid zoning law prohibiting the use of one's property for a shopping center, or for the construction thereon of multiple-family apartment houses, the owner of land may use it for such purpose even though he thereby makes the adjoining property of his neighbor less desirable, neither of such uses being a nuisance *per se* or an encroachment upon the property rights of the neighbor. In such instance the diminution in the value of the neighbor's land is *damnum absque injuria.* See: *Marren v. Gamble,* 237 N.C. 680, 75 S.E. 2d 880; *Harrington & Co. v. Renner, supra.* Thus, the owners of the Morton-Cocke property have the present right to use it as they propose to do, unless there is in effect a valid zoning ordinance of the city of Wilmington forbidding such use. There is no such ordinance in effect if the two ordinances adopted by the City Council 3 March 1967 were adopted pursuant to proper procedures and were within the authority of the City Council.

Zoning laws, when valid, are an exercise of the police power of the sovereign reasonably to regulate or restrict the use of private property to promote the public health, the public safety, the public morals or the public welfare. Thus, the power to zone is the power

of the State and rests in the General Assembly originally. *Schloss v. Jamison,* 262 N.C. 108, 136 S.E. 2d 691. There, it is subject to the limitations imposed by the Constitution upon the legislative power forbidding arbitrary and unduly discriminatory interference with the rights of property owners.

A municipal corporation has no inherent power to zone its territory and restrict to specified purposes the use of private property in each such zone. Such power has, however, been delegated to the cities and incorporated towns of this State by the General Assembly. G.S. 160-172, *et seq.* Obviously, the General Assembly cannot delegate to a municipal corporation more extensive power to regulate the use of private property than the General Assembly, itself, possesses. Consequently, the authority of a city or town to enact zoning ordinances is subject both to the above mentioned limitations imposed by the Constitution and to the limitations of the enabling statute. *Schloss v. Jamison, supra; State v. Owen,* 242 N.C. 525, 88 S.E. 2d 832; *In Re Appeal of Parker,* 214 N.C. 51, 197 S.E. 706, app. dism., 305 U.S. 568. The grant of such power to a municipal corporation imposes no duty upon the city or town to exercise it and the courts may not require the city or town to enact zoning legislation. *In Re Markham,* 259 N.C. 566, 131 S.E. 2d 329. This, within the above limits, is a matter within the discretion of the legislative body of the city or town.

The adoption of a zoning ordinance in exercise of the police power, thus delegated to a municipal corporation, does not exhaust that power. *McKinney v. High Point,* 239 N.C. 232, 79 S.E. 2d 730. The enactment of a zoning ordinance is not a contract with the property owners of the city and confers upon them no vested right to have the ordinance remain forever in force, or to demand that the boundaries of each zone or the uses to be made of property in each zone remain as declared in the original ordinance. *McKinney v. High Point, supra; Marren v. Gamble, supra.* Such legislation by the city may be repealed in its entirety, or amended as the city's legislative body determines from time to time to be in the best interests of the public, subject only to the limitations of the enabling statute and the above mentioned limitations of the Constitution. *In Re Markham, supra; Walker v. Elkin,* 254 N.C. 85, 118 S.E. 2d 1; *McKinney v. High Point, supra; Marren v. Gamble, supra.*

The power to amend its zoning legislation is expressly conferred upon a municipal corporation by G.S. 160-176, which provides:

"*Changes* * * * Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed,

modified or repealed. In case, however, of a protest against such change signed by the owners of twenty per cent or more either of the area of the lots included in such proposed change, or of those immediately adjacent thereto either in the rear thereof or on either side thereof, extending one hundred feet therefrom, or of those directly opposite thereto extending one hundred feet from the street frontage of such opposite lots, such amendment shall not become effective except by favorable vote of three-fourths of all the members of the legislative body of such municipality. The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments. * * *"

The named plaintiffs and the remaining owners of property in the Long Leaf Hills subdivision, on whose behalf the named plaintiffs purport to sue, do not own property adjacent to those portions of the Morton-Cocke tracts as to which zoning restrictions are purported to be changed by the amending ordinances here in question. There is no showing of a protest against such changes in the original zoning ordinance by owners of property across the streets or highways bounding the Morton-Cocke tract. Consequently, the above statute does not require the adoption of the amending ordinance by a three-fourths vote of the members of the City Council. The evidence in the record is ample to show, and it does not appear to be contested, that prior to the adoption of the amending ordinances the City Council conducted a full public hearing upon the matter and the required notice of its meeting was given. Therefore, the procedural requirements for the adoption of the amending ordinances were met.

The plaintiffs contend, however, that the amending ordinances constitute what is called "spot zoning" and, as such, do not fall within the zoning power granted to the city by G.S. 160-172, *et seq.* That statute provides:

> "*Grant of Power.* — For the purpose of promoting health, safety, morals or the general welfare of the community, the legislative body of cities and incorporated towns is hereby empowered to regulate and restrict the * * * use of buildings, structures and land for trade, industry, residence or other purposes. * * *"

G.S. 160-174 provides further with reference to the purposes of such municipal legislation:

> "*Purposes in View.* — Such regulations shall be made in ac-

cordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

In *Walker v. Elkin, supra,* this Court, speaking through Rodman, J., said:

"The term 'spot zoning' has frequently been used by the courts and text writers when referring to changes limited to small areas. Different conclusions have been reached on seemingly similar factual situations. We think the basic rule to determine the validity of an amending ordinance is the same rule used to determine the validity of the original ordinance. *Elizabeth City v. Aydlett,* 201 N.C. 602, 161 S.E. 78. The legislative body must act in good faith. It cannot act arbitrarily or capriciously. If the conditions existing at the time of the proposed change are such as would have originally justified the proposed action, the legislative body has the power to act."

There is a presumption that a zoning ordinance, adopted pursuant to the prescribed procedures, is valid and the mere fact that it depreciates the value of the complainant's property is not enough to establish its invalidity. *Helms v. Charlotte,* 255 N.C. 647, 122 S.E. 2d 817, 96 A.L.R. 2d 439. "When the most that can be said against such ordinances is that whether it [*sic*] was an unreasonable, arbitrary or unequal exercise of power is fairly debatable the courts will not interfere." *In Re Appeal of Parker, supra.* Under such circumstances the courts may not substitute their judgment for that of the legislative body of the municipality as to the wisdom of the legislation. *Schloss v. Jamison, supra; In Re Markham, supra.* It is not required that an amendment to the zoning ordinance in question accomplish or contribute specifically to the accomplishment of all of the purposes specified in the enabling act. It is sufficient that the legislative body of the city had reasonable ground upon which to

conclude that one or more of those purposes would be accomplished or aided by the amending ordinance. When the action of the legislative body is reviewed by the courts, the latter are not free to substitute their opinion for that of the legislative body so long as there is some plausible basis for the conclusion reached by that body. *In Re Markham, supra.*

The evidence before the superior court was ample to show that the City Council had reasonable ground to believe the establishment of a shopping center upon the twenty-seven acres constituting the apex of the Morton-Cocke triangular tract would "facilitate * * * public requirements" and would be in keeping with the comprehensive plan to encourage "the most appropriate use of land" throughout the city. We find nothing in the record to suggest a refusal by the City Council to permit such use of other property similarly situated. Obviously, there is basis for the conclusion that property forming a triangle between two heavily traveled highways is not best suited for construction of single family residences. Whether this, in fact, is true of the Morton-Cocke property was for determination by the City Council.

Spot zoning arises where a small area, usually a single lot or a few lots, surrounded by other property of similar nature, is placed arbitrarily in a different use zone from that to which the surrounding property is made subject. Where such small area is subjected to a more burdensome restriction than that applicable to the surrounding property of like kind, the weight of authority is that the owner of the property so subjected to discriminatory regulation, may successfully attack the validity of the ordinance. See: *Higbee v. Chicago, B. & Q. R. Co.*, 235 Wis. 91, 292 N.W. 320, 128 A.L.R. 734; *Marshall v. Salt Lake City*, 105 Utah 111, 141 P. 2d 704, 149 A.L.R. 282. The rule denying the validity of spot zoning ordinances has also been applied where a small area previously in a residential zone has been removed, by an amending ordinance, from such zone and reclassified to permit business or commercial use over the objection of adjoining owners of residential property. 58 Am. Jur., Zoning, § 39; 101 C.J.S., Zoning § 91; Yokley, Zoning Law and Practice, § 8-3, 3rd ed.

If the amending ordinance is beyond the legislative power of the city, whether for the reason that it constitutes spot zoning or on some other ground, its adoption does not remove the designated area from the effect of the comprehensive zoning ordinance previously enacted. In that event, the proposed use remains unlawful and the right of owners of adjoining property to enjoin such use is not affected by the amending ordinance. However, the amending ordinances before

us do not fall into the category of spot zoning. They apply to approximately forty acres constituting a triangle lying between two heavily traveled highways and separated from the property of the plaintiffs by a buffer strip of twenty acres of the Morton-Cocke tract still zoned for single family residences. There is ample support in the record for the conclusion that the rezoning of the Morton-Cocke tract was not arbitrary or discriminatory, may reasonably be deemed related to the public welfare and is not inconsistent with the purpose for which the city is authorized by the statute to enact zoning regulations. The conclusion of the trial judge that the City Council, in adopting the amending ordinances, did not act arbitrarily or capriciously but acted in good faith, reasonably and consistent with its comprehensive zoning plan, is supported by the court's findings of fact, which, in turn, are supported by competent evidence in the record.

We find no error in the denial of the motion for a trial by jury. The Declaratory Judgment Act provides for trial by jury of issues of fact where jury trial is not waived by the parties. G.S. 1-261. However, the issue in the present case is as to the authority of the City Council to adopt the amending ordinances, not as to the advisability or wisdom of the rezoning. The controversies between the parties as to the facts, which were to be determined by the superior court, presented questions of fact and not issues of fact. *Armstrong v. McInnis,* 264 N.C. 616, 142 S.E. 2d 672. Consequently, a jury trial was not required.

The findings of fact made by the superior court are supported by competent evidence and are binding upon us. Indeed, there appears to be no substantial controversy as to the facts so found. The plaintiffs' exceptions thereto are overruled.

The assignments of error relating to the admission or exclusion of evidence do not comply with Rules 19 and 21 of The Rules of Practice in the Supreme Court, for the reason that each requires a voyage of discovery through the record to determine the question of law intended to be presented. A mere reference in the assignment of error to the page of the record where the asserted error may be discovered is not a compliance with these rules. *Douglas v. Mallison,* 265 N.C. 362, 144 S.E. 2d 138; *Hunt v. Davis,* 248 N.C. 69, 102 S.E. 2d 405. However, we have made the requested voyages through the record and find no reversible error in any of the rulings of the court upon the admission of evidence. Much of that excluded would have been appropriate for presentation to the City Council in an effort to persuade it that the rezoning of the Morton-Cocke land was unwise. However, had it all been admitted, it would not have supported a

finding that the City Council acted arbitrarily in reaching the contrary conclusion. This was the question before the superior court. The burden rested upon the plaintiffs so to show. *Schloss v. Jamison, supra.* It would serve no useful purpose to discuss each of these assignments of error in detail. We have considered all of them and find no reversible error therein. There was no error in admitting in evidence in the superior court the exhibits presented to and considered by the City Council. These were material upon the question of the nature, extent and sufficiency of the investigation by and hearing before the City Council. They were not received as evidence of the correctness of its determination as to the desirability of the rezoning.

We have carefully considered each assignment of error brought forward by the plaintiffs into their brief. We find no reversible error. It was not for the superior court, and it is not for this Court, to review the action of the City Council for the purpose of substituting the judgment of the court for that of the Council concerning the wisdom of permitting the proposed use of the Morton-Cocke tract. That is a matter of legislative discretion committed by the statute to the City Council.

Affirmed.