DARRYL E. UNRUH AND WIFE, GRACE E. UNRUH, PLAINTIFFS v. CITY OF ASHEVILLE, DEFENDANT, AND CAROLINA L. BRIDGETT, RAYMOND G. GEPHARDT, MARION E. GEPHARDT, JOAN S. GRIMES, S. JANSON GRIMES, LISA G. HOLT, LAWRENCE B. HOLT, LEMAC N. HOPKINS, MARJORIE HOPKINS, VALERIE J. KLEMMER, ROBERT E. DUNGAN, DANIEL O'HANNON, SHEENA O'HANNON, THOMAS L. PAINTER, HERBERT H. PATRICK, WALLACE H. PATTERSON, MARY S. PATTERSON, TIMOTHY L. WARNER, JEANNE T. WARNER, AND BEATRICE P. HENDRIX, INTERVENOR-DEFENDANTS

No. 8828SC1339

(Filed 6 February 1990)

1. **Municipal Corporations § 30.20 (NCI3d)— historic district— amendment of zoning ordinance—statutory procedure not followed**

The trial court correctly declared invalid an ordinance establishing an historic district where N.C.G.S. § 160A-385 requires that an amendment to a zoning regulation shall not become effective except by favorable vote of three-fourths of all members of the City Council when there is a protest signed by owners of twenty percent or more either of the area of the lots included or those immediately adjacent thereto; the area was rezoned an historic district by a four-to-three vote; and the percentage of the rezoned or adjacent area owned by protesting property owners was not addressed in the record. In undertaking to enact an ordinance over the protests of affected property owners, the city had an affirmative duty

UNRUH v. CITY OF ASHEVILLE

[97 N.C. App. 287 (1990)]

to determine the sufficiency, timeliness, and percentage of the protest and to call for the vote that the law required. Its failure to determine those essential facts rendered the ordinance invalid on its face.

**Am Jur 2d, Zoning and Planning §§ 40, 57, 58.**

2. **Municipal Corporations § 31 (NCI3d)— historic district— declaratory judgment action to declare ordinance invalid— administrative remedies not exhausted—declaratory judgment action proper**

Plaintiffs could properly challenge an historic zoning district ordinance by a declaratory judgment action before their administrative remedies were exhausted because they had the necessary personal and legal interest in that they were owners of property in the rezoned area on which the City would not permit them to build.

**Am Jur 2d, Zoning and Planning §§ 40, 57, 58.**

APPEAL by defendant and intervenor-defendants from order entered 15 July 1988 by Lewis, Robert D., Judge, in BUNCOMBE County Superior Court. Heard in the Court of Appeals 7 June 1989.

*Van Winkle, Buck, Wall, Starnes and Davis, by Albert L. Sneed, Jr., for plaintiff appellees.*

*William F. Slawter and Sarah Patterson Brison for defendant appellant.*

*Robert E. Dungan, pro se, and Michael E. Smith for intervenor-defendant appellants.*

PHILLIPS, Judge.

[1] By this declaratory judgment action plaintiffs, who own property in the district and were denied a certificate or permit to build on it, seek to have the City of Asheville ordinance establishing the Chestnut-Liberty Historic District declared invalid. The individual defendants intervened to join the City in defending the ordinance, which the court, following a hearing at which all parties offered evidence, declared invalid on the ground that the statutory procedures for establishing historic districts were not followed.

**UNRUH v. CITY OF ASHEVILLE**

[97 N.C. App. 287 (1990)]

City ordinances creating historic districts, as other ordinances which limit the use of property, are zoning ordinances. The validity of such ordinances depends upon following the procedures laid down by the legislature for their adoption, because cities are creatures of the legislature and have only those powers that the legislature has granted them. *Zopfi v. City of Wilmington*, 273 N.C. 430, 160 S.E.2d 325 (1968); *Schloss v. Jamison*, 262 N.C. 108, 136 S.E.2d 691 (1964). The only authority that the legislature has granted towns and cities to regulate the use of property is contained in Article 19, Planning and Regulation of Development, of Chapter 160A of the General Statutes. The statutes in Part 2 of that Article contain their authority to regulate subdivisions; the statutes in Part 3 contain their zoning authority; and the statutes in Part 3A contain their authority to create historic districts. In Part 3A, G.S. 160A-395 provides that cities—

> may, *as part of a zoning ordinance* . . . designate and from time to time amend one or more historic districts within the area subject to the ordinance. Such ordinance may treat historic districts either as a separate-use district classification or as districts which overlay other zoning districts. (Emphasis added.)

Despite the plain wording of this statute defendants incongruously and vainly contend that our zoning statutes do not apply to the ordinance in question, which undertook to amend Asheville's zoning regulation by *rezoning* the Chestnut-Liberty Street area as a local historic district. The City Council enacted the rezoning ordinance over the opposition of plaintiffs and other protesting property owners by a 4 to 3 vote. The sufficiency of that vote is a crucial issue in the case. For G.S. 160A-385 states that an amendment to a municipal zoning regulation "shall not become effective except by a favorable vote of three-fourths of all the members of the city council" when a protest occurs "signed by the owners of twenty percent (20%) or more either of the area of the lots included in a proposed change, or of those immediately adjacent thereto." Since the ordinance was opposed by protesting property owners, its validity necessarily depends upon what percent of the rezoned area the properties of the protesting property owners amounted to. If their properties aggregated 20 percent or more of the rezoned or adjacent lots the 4 to 3 vote was insufficient and the ordinance is invalid; if their properties aggregated a less percent of the specific lots the vote was sufficient and the ordinance is valid.

But it has not been determined and we cannot ascertain what percentage of the rezoned or adjacent area was owned by the protesting property owners because that crucial issue is not addressed in the record. What the record does show pertinent thereto, as the trial court found, is that: The City had not prescribed a form for protest petitions though G.S. 160A-386 authorized it to do so; and though G.S. 160A-386 provides that a protest must be received in sufficient time to allow the City at least two working days "to determine the sufficiency and accuracy of the petition" and the City received numerous writings from purported property owners opposing the proposed ordinance no determination was made either as to the accuracy or sufficiency of the protests or as to the percentage of rezoned or adjacent land owned by the protestors. These established facts on this vital aspect of the controversy led the court to conclude as a matter of law that: In undertaking to enact the ordinance over the protests of affected property owners the City had an affirmative duty to determine the sufficiency, timeliness, and percentage of the protests and to call for the vote that the law required; and its failure to determine those essential facts rendered the ordinance invalid on its face, since the 4 to 3 vote was insufficient to overcome a protest by property owners that complied with the provisions of G.S. 160A-385. These conclusions are correct: For only the City knew what protest documents were received and from whom; only it could initially determine the timeliness, accuracy and sufficiency of the protests; and since the City made no effort to determine those statutory conditions for a valid ordinance it cannot be presumed that it complied with them. A contrary holding would render nugatory a statute that the City was obliged to follow in enacting an ordinance which affects the rights of property owners.

[2]  The appellants' other contention, that the action should have been dismissed because plaintiffs did not exhaust their administrative remedies before filing it, is also without merit. Though the denial of their certificate for new construction could have been followed by an appeal to the Board of Adjustment and a petition to the Superior Court for *certiorari*, as G.S. 160A-397 authorizes, and though ordinarily administrative remedies authorized by the legislature must be exhausted before resorting to the courts, *Presnell v. Pell*, 298 N.C. 715, 260 S.E.2d 611 (1979), under the circumstances recorded plaintiffs were not limited to following that course. For under our law —

[T]he validity of a municipal zoning ordinance, when directly and necessarily involved, may be determined in a properly constituted action under our Declaratory Judgment Act. However, this may be done only when challenged by a person who has a specific personal and legal interest in the subject matter affected by the zoning ordinance and who is directly and adversely .affected thereby. (Citations omitted.)

*Taylor v. City of Raleigh*, 290 N.C. 608, 620, 227 S.E.2d 576, 583 (1976). This is such an action. As owners of property in the rezoned area that the City will not permit them to build on, plaintiffs have the necessary personal and legal interest to challenge the ordinance.

Affirmed.

Judges BECTON and LEWIS concur.